## GENERAL ELECTRIC CO. v. ELECTRICAL PARTS CO., Inc., et al.

District Court, N. D. Ohio, E. D. January 30, 1929.

No. 2210.

Hull, Brock & West, of Cleveland, Ohio, for plaintiff.

Charles I. Parlett, of Akron, Ohio, and Darby & Darby, of New York City, for defendants.

JONES, District Judge. There are two defendants and two issues not involved in a decision. As the suit was finally shaped, it becomes one primarily against the Specialty Appliance Company, which was the only defender, and involves the sole issue of validity of three patents belonging to the plaintiff. The case was tried and submitted to Hon. D. C. Westenhaver, late a judge of this court, in January, 1928, and, because of his illness and subsequent death, without decision, it was submitted by agreement of the parties upon the transcript of the testimony, evidence, and briefs of counsel.

The patents in suit relate to a device for transforming alternating current into direct current, largely for storage batteries, and is called a rectifier. It is conceded that the defendant's structure infringes, if the plaintiff's patents are valid; therefore, in view of such concession, the defense is limited to lack of invention and invalidity, in view of anticipation in the prior art.

The defendant contends that, the Friederich patent being strictly limited for a source of light, and not for a rectifier, infringement by it arises out of the idea of taking two electrodes, one of them a filament and the other a plate electrode, separated from each and inclosed in a partially exhausted vessel, with inert gas introduced, producing a certain kind of arc, and that the patentable features of Friederich in that pertinent respect are completely anticipated. As to the two Meikle patents in suit, the defendant also contends that they are anticipated by the Friederich patent, contending that the only requirement of a rectifier over any discharge device is that one electrode should be maintained hotter than the other, because, if both of them get to the same degree of heat, then one may be a cathode at one minute, and the other would be a cathode the other minute, and that this claimed distinction discloses

nothing not already appearing in earlier inventions; further contending that the limitation to argon gas in the second Meikle patent is nothing more than an equivalent for any of the other gases previously specified. [1-3] As the issues were made up, plaintiff contended that claims 1, 6, 8, and 9, of Friederich, No. 1,393,520, October 11, 1921, are infringed by the defendant, and that claims 3, 4, 5, 7, and 8, of Meikle, No. 1,182,290, and all four claims of Meikle, No. 1,266,517, are .infringed.

The idea of Friederich while limited to illumination, disclosed that the electric are created between electrodes could be maintained without disintegration of the electrodes, and provided for a pressure for independently heating the cathode to incandescence; it being the claim that the Friederich patent resulted in increased efficiency and life, and the maintenance of the process at low voltage after starting, and that these were the things for which others were striving.

Stated in the terms of plaintiff's evidence, one of the features of the Friederich patent is that liberation of the electrons causes them to bombard the anode with sufficient energy to produce incandescence. Another essential feature provides that inert gas strikes an electrical arc, and that there is sufficient gas pressure present to minimize the distance of electron travel between collisions; the result being a luminous arc. Particular configuration of the envelope is also required, and a proper spacing of the electrodes. More briefly stating the essential features of Friederich, in the language of Compton, it is an arc between nondisintegrating stationary electrodes, which can be started without motion of the electrodes, or difficult starting mechanism, and which can run without attention.

It further appears in the plaintiff's evidence that the difference between the first Meikle patent and Friederich's is primarily a difference in purpose. The first Friederich was designed to operate as a source of illumination, and the Meikle device as a rectifier. Perhaps it may be stated that the most important difference is found in claim 3 of the first Meikle patent, wherein is provided for "an anode operable continuously below about 727 degrees C., and a filling of gas inert with respect to the cathode at high temperatures, the pressure of said gas being substantially between the limits of about a centimeter of mercury and atmospheric pressure," thus producing a low voltage drop for straightening alternating current into direct current, rather than for light. The essential novel feature of the second Meikle patent was testified to be the disclosure that the use of argon gas insured low voltage drop and uniform operation throughout the period of use; the result sought being to reduce the volume of electrical energy consumed, and to maintain the incandescent electrode against disintegration.

The structure of these devices is not new. It is the function, operation, and results accomplished which are claimed to be the novel and useful purposes which make for the validity of these inventions. It is extremely difficult to understand the precise elements and features of conceptions in the field of electricity. One unskilled in the art finds difficulty in distinguishing what may be thought to be functional and operable differences in resulting action produced by the treatment of electrical current. It is very much like dealing with elements in the realm of the unseen, whose existence only is concluded from the effects produced.

An examination of the prior art, as it relates to rectifiers, discloses that the result sought was not fully obtained before the plaintiff's assignors accomplished it. The co-ordination of gas pressure, high and low, the spacing of electrodes, the configuration and size of the envelope or bulb, and the wattage input of the filament, resulted in a rectifier, as distinguished from an electric lamp, and that was what Meikle was striving to do. The merit and success of such a device are partially reflected in the evidence of the number sold, and the defendant's concession as to infringement, if valid.

Fleming, No. 803,864, came nearer to disclosing the distinguishing elements of the rectifier in suit; but he used a vacuum, was limited to small currents, and required high voltage. It was not a successful device for transforming power. The same observation may be made with respect to Richardson, No. 1,189,738. Much of the art, such as Kruh, Fleming, and Wehnelt, borders on the field where Friederich and Meikle were experimenting; but the results accomplished by them did not disclose completely or make merely obvious the result accomplished by Meikle.

That the field was still open for the development of the novel features of plaintiff's patents has not, in my judgment, been disproved by the references to earlier invention. The fact of defendant's infringement is some evidence of the tribute paid by the defendant to the novelty and success of the patents in suit. It is not enough to say that a more

or less sudden and popular demand for a simple and efficient rectifier for storage batteries found the art marking time. That demand required an advance, and an answer to the problem, even though somewhat amounting to an adaptation of what was partially known to the solution of it, in a new, useful, and more efficient device.

Other references, not mentioned here, are largely devices for lighting, and the purpose, therefore, is not in any degree related to the result accomplished by the plaintiff's patents. It seems to me that the presumption of validity arising from the issuance of the patents in suit is fortified by the evidence rather than overcome.

Infringement having been conceded, the plaintiff may have the usual and proper decree.